IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD T. DUKE, | ) | CASE NO. 5:15 CV 1431 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action by Richard T. Duke under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 16.

[3] ECF # 12.

[4] ECF # 13.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts.[8] They have participated in a telephonic oral argument.[9]

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Duke, who was 51 years old at the time of the administrative hearing,[10] graduated from high school[11] and lives with his fiancé and their three children.[12] He was previously employed as a maintenance manager.[13]

The Administrative Law Judge ("ALJ") found that Duke had the following severe impairments: degenerative joint disease of the shoulders bilaterally, congestive heart failure,

---

[5] ECF # 10.

[6] ECF # 14.

[7] ECF # 19 (Duke's brief), ECF # 22 (Commissioner's brief), ECF # 23 (Duke's reply brief).

[8] ECF # 24 (Duke's charts), ECF # 22-1 (Commissioner's charts).

[9] ECF # 27.

[10] ECF # 13, Transcript of Proceedings ("Tr.") at 51.

[11] *Id.*

[12] *Id.* at 52.

[13] *Id.* at 36.

cardiomyopathy and depression (20 CFR 404.1520(c)).[14] The ALJ made the following finding regarding Duke's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that claimant can never climb ladders, ropes or scaffolds, but occasionally climb ramps and stairs. Likewise, the claimant can occasionally stoop, kneel, crouch but can never crawl. In addition, the claimant cannot perform any overhead reaching bilaterally. The claimant must also avoid concentrated exposure to heat and humidity. The claimant must avoid concentrated exposure to fumes, odors, dusts, etc. The claimant must avoid hazards. Moreover, the claimant is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others. Further, the claimant cannot perform work requiring strict production quotas, piece-rate work or assembly line work. Lastly, the claimant is limited to only occasional interaction with others.[15]

The ALJ decided that this residual functional capacity precluded Duke from performing his past relevant work as a maintenance manager.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Duke could perform.[17] The ALJ, therefore, found Duke not under a disability.[18]

---

[14] *Id.* at 29.

[15] *Id.* at 31.

[16] *Id.* at 36.

[17] *Id.* at 37.

[18] *Id.* at 17.

The Appeals Council denied Duke's request for review of the ALJ's decision.[19] With this denial, the ALJ's decision became the final decision of the Commissioner.[20]

**B.  Issues on judicial review**

Duke asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Duke presents the following issues for judicial review:

- Whether the ALJ evaluated the opinion evidence consistent with Agency policy or Sixth Circuit precedent.

- Whether the ALJ's failure to evaluate the opinion of Dr. Barnett consistent with the stringent requirements of the regulations is not subject to harmless error analysis.

For the reasons that follow, I conclude that the ALJ's no-disability finding does not have the support of substantial evidence. The denial of Duke's application will be reversed and remanded for further administrative proceedings.

---

[19] *Id.* at 24.

[20] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

## Analysis

*A.     Standards of review*

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.     *The treating source and good reasons rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

---

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

- • the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- • the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- • the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B. Application of standards

This case presents the single issue of whether the ALJ erred in assigning little weight to the functional opinions of Dr. Richard Barnett, Ph.D., Duke's treating psychologist.

The ALJ here discussed three functional opinions from Dr. Duke:

- a document entitled "Casenote" dated November 12, 2010, to which the ALJ gave no specific weight but stated it was not supported by the record;[72]

- an opinion dated October 9, 2012, which the ALJ assigned "little weight" because it "is not consistent with [Duke's] good prognosis and improvements with medication:"[73] and

- an opinion from January 29, 2013, which the ALJ also gave little weight for the reasons that it was not consistent with the record as a whole and because Dr. Barnett reported that Duke's "prognosis was good and he was improving," as well as "other reports" showing that Duke "was stable."[74]

By contrast, in formulating the RFC in this case the ALJ here gave great weight to a September, 2011 report from Dr. James Sunbury, Ph. D., a consultative examiner.[75] Moreover, the ALJ also supported the RFC by citing the report of a state agency reviewing

---

[71] *Id.* at 940.

[72] Tr. at 35.

[73] *Id.* at 36.

[74] *Id.*

[75] *Id.* at 35,36.

-14-

psychiatrist. In an odd analysis, the ALJ initially gave that report "little weight" because it was, in the opinion of the ALJ, improperly supportive of a finding of a severe impairment,[76] but then went on to state that this opinion did support the RFC as formulated.[77]

Duke himself notes, and my own review of the record establishes, that Dr. Barnett's functional opinions are largely consistent with those of Dr. Sunbury.[78] As Duke states, Dr. Barnett found that he had marked difficulties interacting with others and a marked limitation as to his ability to adapt to stressful workplace situations, and to the demands of regular attendance, making decisions, scheduling and completing tasks and interacting with supervisors and coworkers.[79] Dr. Sunbury noted that although Duke's general cognition and social functioning was adequate, his depression created limitations as to his persistence and pace while working.[80]

In fact, the RFC here contains restrictions going directly to substantially all of these limitations identified by both Dr. Barnett and Dr. Sunbury. The RFC restricts Duke to "simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others."[81] Moreover, the RFC

---

[76] *Id*.

[77] *Id*.

[78] *See*, ECF # 19 at 4.

[79] *Id*. (citing record).

[80] *Id*.

[81] *Id*. at 32.

states that Duke may not "perform work requiring strict production quotas, piece-rate work or assembly line work."[82]

The most apparent difference between Dr. Barnett's opinions and the RFC concerns interaction with others. As noted above, Dr. Barnett found a marked limitation in Duke's ability to interact with others, and in his specific ability to interact with supervisors and coworkers. But, as also noted, Dr. Sunbury found that Duke's social functioning was adequate, but that his depression created persistence and pace limitations. Thus, while it is correct to note the similarities in the opinions of Dr. Barnett and Dr. Subury, it is important to note the important difference in the area of interaction with others, such as coworkers and the public, a limitation not addressed by the RFC.

In this regard, the reasons given by the ALJ for discounting Dr. Barnett's opinions do not directly address why Dr. Barnett's view of this specific limitation is not supported by the record or is otherwise inconsistent with reports that his condition is "stable."[83] Plainly, a poor condition remains so even when it can be described as stable. Further, the ALJ's comments about Dr. Barnett's notes showing that Duke's prognosis was "good" or that he was "improving"[84] are not specific, and could describe a situation where some functional limitations were getting better, or expected to do so, but not necessarily all. Standing alone,

---

[82] *Id.*

[83] *See, id.* at 35.

[84] *Id.*

these broad generalities do not provide the basis for meaningful judicial review of the decision not to grant the weight appropriate to the opinion of a treating source.

In addition, the puzzling analytical approach to the opinion of the state reviewer's opinion of January 23, 2012 - *i.e.*, assigning it "little weight"[85] but then citing it as supporting the RFC[86] - also makes this portion of the ALJ's opinion incapable of meaningful judicial review. Some explanation is needed as to how a heavily discounted opinion can also serve as substantial evidence in support of an RFC.

Finally, the great weight assigned to Dr. Sunbury's September, 2011 opinion also suffers from an absence of good reasons given in support of that decision. As noted, the key difference between Dr. Sunbury's functional opinion and the latest opinion of Dr. Barnett is in the area of Duke's ability to deal with supervisors and coworkers. As the ALJ noted, Dr. Sunbury, in 2011, found that "Duke does not have any limitation with respect to his abilities and limitations [sic] in responding appropriately to supervision and coworkers in a work setting."[87] That opinion was given great weight because Dr. Sunbury "personally examined" Duke, and because that opinion "is consistent with the record as a whole and [Duke's] reported daily activities."[88]

---

[85] *Id.*

[86] *Id.* at 36.

[87] *Id.*

[88] *Id.*

-17-

But, as noted, that opinion is not consistent with Dr. Barnett's opinion in that specific area. Moreover, the fact that Dr. Sunbury examined Duke once in 2011 cannot possibly be a good reason to give his opinion more weight than that of Dr. Barnett, who had an ongoing treatment relationship with Duke and last examined him in 2013. The Sixth Circuit has particularly cautioned against giving greater weight to the opinion of a non-treating source that did not have an opportunity to consider the entire record, including evidence which entered the file after the opinion at issue.[89] At the very least, the ALJ here should have discussed the later views of Dr. Barnett in the context of assigning great weight to the earlier opinion of Dr. Sunbury and then given good, specific reasons, capable of meaningful judicial review, why Dr. Sunbury's opinion was nevertheless entitled to greater weight.

As a concluding note, none of the above conclusions should obscure the fact that, once again, the ALJ did not clearly follow the two-step analysis required when deciding on the weight to be given to the functional opinion of a treating source. *Gayheart*, which spells out the rubric, merely restated the Commissioner's own regulations, and as such is not some optional template for conducting this analysis.

## Conclusion

For the reasons stated, I find that substantial evidence does not support the decision of the Commissioner in this case, and thus the decision is reversed and the matter remanded for further proceedings consistent with this opinion.

---

[89] *See, Blakely*, 581 F.3d at 409 (citation omitted),

    IT IS SO ORDERED.


Dated: September 27, 2016                                       <u>s/ William H. Baughman, Jr.</u>
                                                                       United States Magistrate Judge